FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 SEP -7 PM 5: 14

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

WALTER LEWIS                                CIVIL ACTION

VERSUS                                      NO. 05-1211

GREYHOUND LINES, INC.; ET AL.               SECTION F

## ORDER AND REASONS

Before the Court is the defendant's Motion for Summary Judgment. For the reasons that follow, the motion is GRANTED.

### Background

This lawsuit is brought under 29 U.S.C.A. 1001 et seq. The plaintiff, a former Greyhound Employee, is seeking to vindicate what he claims to be due under Greyhound's disability benefits plan. The time-line is tortuous. The plaintiff first applied for disability benefits in 1993 and then again in 1997. Both requests were denied. His appeal was also denied. Plaintiff brought this lawsuit on March 31, 2005, seeking damages in the amount of $366,000.00, plus interest and costs.

Walter Lewis worked for Greyhound from June 7, 1976 through June 23, 1994. Greyhound provided a disability and retirement plan for employees who became disabled and were disqualified from their job because of that disability. The Plan is known as the Greyhound Lines, Inc. - Amalgamated Transit Union National Local 1700 Retirement and Disability Plan. The Plan, which resulted from a

1



collective bargaining agreement between Greyhound and the Union, is a defined benefit plan in which Mr. Lewis was a participant.

The Plan, which all agree is governed by ERISA, provides retirement, disability and death benefits to eligible employees of Greyhound and their beneficiaries as set forth in the governing rules of the Plan Document. Although the day-to-day administration of the Plan is carried out by the Plan Manager and other staff members, known as the "Fund Office," the ultimate authority to carry out the terms of the Plan is vested in a Board of Trustees. According to the Plan Document, the Board of Trustees has the power to "decide any questions arising in the administration, interpretation, and application of this Plan" and to "make all ultimate determinations as to the right of any person to a benefit." Now to the dispute.

The Union went on strike against Greyhound in March 1990. The plaintiff had been working as a bus driver for Greyhound but took a job as a furniture mover during the strike; on June 26, 1991, while working as a furniture mover, he sustained a neck and right shoulder injury. Three years later, in early February 1993, he requested an application for disability benefits from the Fund Office. In responding to plaintiff's request and to initiate the Plan process, the Fund Office provided him with a copy of the Plan's form titled "Applicant's Medical Information and Doctor's Statement." Mr. Lewis returned the form early March 1993. At that

2

time, the Plan Document provided that any claim for benefits could be decided by a Sub-Committee of the Board of Trustees and could be appealed to the entire Board of Trustees pursuant to the claims procedures set forth in the Plan.  Originally under the Plan, a Non-Occupational Disability was defined as "an accident, disease, or physical impairment of an Employee, whether or not occupationally related, which results in a physical disqualification from his or her job with the Company and such physical disqualification is determined by the Board of Trustees, after review of medical reports, to be permanent in nature."

After receiving his initial application, the Fund Office sent a letter to Mr. Lewis acknowledging receipt of his medical evidence and informing him that the evidence as presented did not indicate that he was rendered totally and permanently disabled as required by the terms of the Plan Document.  The letter stated that additional medical evidence would be helpful to the Sub-Committee. Mr. Lewis responded by providing the Fund Office with a letter from Dr. Marvin Lipton, who had been treating him since his accident. The doctor's letter stated that Mr. Lewis could not return to the unrestricted duties of a bus driver because he was precluded from heavy lifting.

This letter, along with the Medical Statement and Dr. Lipton's report to Transamerica Insurance Company, that Mr. Lewis originally presented with his application, were considered by the Sub-

3

Committee of the Board of Trustees on April 5, 1993. All of the medical evidence, except for the letter from Dr. Lipton of March 18, 1993, referred to the plaintiff's inability to perform his post-strike bus driver job of furniture mover; it did not provide evidence as to whether the plaintiff was precluded from performing the duties of his pre-strike job of Greyhound bus driver. Additionally, while Dr. Lipton's March 18, 1993 letter noted that the plaintiff was unable to return to the unrestricted duties of a bus driver, the letter did not state that this condition was permanent. After reviewing the evidence, the Sub-Committee denied plaintiff's application for disability benefits, citing insufficient medical evidence to support a finding of permanent disqualification from his job as bus driver for the Company as required by the Plan.

The Fund Office then notified the plaintiff on April 7, 1993 of the denial of his application and advised him of his right to appeal the determination to the Board of Trustees within 60 days. The plaintiff received his notice three days later. The Plan Document also required that a Plan Participant exhaust his administrative remedies prior to seeking a judicial determination of the Plan benefits. But Mr. Lewis took no action to file a written appeal of the decision within the 60 day time period following the denial.

Then things changed. On May 25, 1993, the Non-Occupational

4

Disability provisions of the Plan were amended. Section 1.2(18)(b) defining Non-Occupational Disability was amended to provide that

> an Employee is disabled if he has received a written determination from the Social Security Administration that he is disabled under Title II or Title XVI of the Social Security, and the effective date of disability, as set forth in the written determination, is on or before the day he ceased to be an Employee.

The Board of Trustees continued to apply the pre-amendment disability provision to cases that occurred before the date of amendment, and the new disability rules tied to Social Security thresholds were applied to cases in which the disability occurred after May 25, 1993.

A little over a year later, on July 23, 1994, the plaintiff was terminated from his employment with Greyhound for not returning to work after the strike ended. Over three years after his termination, on August 27, 1997, the plaintiff requested a new application for disability benefits. He submitted new evidence, in the form of a Social Security Administration determination of permanent disability, which stated that the plaintiff was disabled as of October 11, 1995. Following receipt of this letter, the Plan Manager sent a letter to the plaintiff acknowledging receipt of the plaintiff's "request for disability retirement papers." The Plan Manager determined that plaintiff was not eligible because the Social Security Administration determination stated that the plaintiff was disabled as of October 11, 1995. Because the plaintiff was terminated on June 23, 1994, he was not in

Greyhound's employment at the time of his disability, and, therefore, was deemed to be ineligible for benefits. But the plaintiff persisted.

On July 1, 1999, the Fund Office received a handwritten letter from the plaintiff dated June 22, 1996, stating the plaintiff's desire to appeal the denial of his application. The Fund Office then sent a letter acknowledging the plaintiff's appeal and informing the plaintiff that it would be presented to the Board. When the Board met on July 28, 1999, the Board denied the plaintiff's request; it applied the revised 1993 rules, and stated that because the Social Security Administration determined the plaintiff to be disabled as of a date after his termination from Greyhound's employment, his application was again denied.

## I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

II. Application

The U.S. Supreme Court has held that "a denial of benefits challenged under [ERISA is] to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for

benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).[1] If the benefit Plan gives administrators such authority, then the abuse of discretion standard will be the proper standard of review. Kennedy v. Electricians Pension Plan, IBEW No. 995, 954 F.2d 1116, 1121 (citing Vasseur v. Halliburton Co., 950 F.2d 1002, 1006 (5th Cir.1992); Pierre v. Connecticut Gen. Life Ins. Co., 932 F.2d 1552, 1556 (5th Cir.), cert. denied, 502 U.S. 973, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991); Penn v. Howe-Baker Engineers, Inc., 898 F.2d 1096, 1099 (5th Cir.1990)). This motion triggers the Fifth Circuit's abuse of discretion inquiry.

Under the terms of the Plan, the Board of Trustees is vested with the authority to "decide any questions arising in the administration, interpretation, and application of this Plan" and to "make all ultimate determinatons as to the right of any person to a benefit." Accordingly, the Fifth Circuit requires this Court review the Board's interpretation of the provisions governing the denial of Non-Occupational Disability benefits for an abuse of discretion. Id.

In reviewing the Board's decision regarding plan

---

[1] Although plaintiff and defendant have argued back and forth about whether this claim is time-barred by prescription, whether the plaintiff exhausted his administrative remedies before filing suit, and whether the 1993 application and the 1997 application should be considered in tandem or as separate applications, this Court takes up the more pivotal issue in the review of an ERISA claim for benefits, namely, whether there has been an abuse of discretion. It is unnecessary to reach the other issues.

8

interpretation for abuse of discretion, this Court relies on the same two-part process that has consistently been used by the Fifth Circuit. Wildbur v. ARCO Chemical Co., 974 F.2d 631, 638 (citing, Jordan v. Cameron Iron Works, Inc., 900 F.2d 53, 56 (5th Cir.), cert. denied, 498 U.S. 939, 111 S.Ct. 344, 112 L.Ed.2d 308 (1990)). The first step in the process is to determine the legally correct interpretation of the Plan's provision. Batchelor v. International Brotherhood of Electrical Workers Local 861 Pension & Retirement Fund, 877 F.2d 441, 444 (5th Cir.1989). Then, the Court must determine if there has been an abuse of discretion in light of the interpretation given the Plan by the Trustees. Kennedy v. Electricians Pension Plan, IBEW No. 995, 954 F.2d 1116, 1121 (5th Cir. 1992).

A. The Correct Interpretation

In determining the legally correct interpretation of the Plan, the Court considers three issues: (1) whether the Board has given the Plan a uniform construction; (2) whether the Board's reading of the Plan is fair and reasonable; and (3) whether the interpretation results in substantial unanticipated costs. Batchelor, 877 F.2d at 444 (citing Dennard v. Richards Group, Inc., 681 F.2d 306, 314 (5th Cir.1982); see also, Jordan v. Cameron Iron Works, Inc., 900 F.2d 53 (5th Cir.1990), cert. denied, 498 U.S. 939, 111 S.Ct. 344, 112 L.Ed.2d 308 (1990)).

i. Uniform Construction

9

To determine whether there has been uniform construction, the Court looks to whether the Plan administrator has consistently interpreted and applied the provision in question. Kennedy, 954 F.2d at 1122. In Kennedy, the court found that "only two other requests for past service credit that even resemble the request from [the plaintiff]" were present and that no evidence was presented indicating the rationale for those denials. Id. Not surprisingly, the court in Kennedy found that there had been no uniform construction. Id. At the time that Mr. Lewis first presented his application for the Non-Occupational Disability Benefits, the Board of Trustees evaluated whether "an accident, disease, or physical impairment of an Employee," resulted in a physical disqualification from his job with Greyhound and whether such physical disqualification "after review of medical reports" was permanent in nature. To support the argument that the provision of the Plan in question has been uniformly construed by the Board, Greyhound invokes 19 instances from the Minutes of a January 10, 11 & 12, 1990 Sub-Committee meeting during which applications for disability pensions were denied because medical evidence submitted to the Sub-Committee was insufficient to determine that the applicant was permanently disqualified from his job. Plaintiff responds that Greyhound has not submitted sufficient medical evidence relevant to those 19 instances that would show the Sub-Committee's rationale in determining what

medical evidence was acceptable for a determination of permanent disability and that which was not. That argument wholly misses the point: what is critical is whether the Board faithfully followed the Plan process in trying to determine disability, not the correctness of that inquiry.

In a motion for summary judgment, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Plaintiff has presented no evidence that those 19 other denials show anything other than a uniform construction of the Plan's disability provisions and mandated process. This setting is distinguishable from Kennedy, where only two instances of previous denials were proven and the Board had given inconsistent reasons why the plaintiff's application had been denied. Here, no such inconsistencies exist. Kennedy, 954 F.2d at 1122. Accordingly, this Court finds that the Board has given the Plan a uniform construction.

    ii. Fair and Reasonable Reading

The question in deciding whether a fair and reasonable reading has been given to the Plan is whether the plain language of the Plan document supports the Board's decision. Wildbur v. ARCO Chemical Co., 974 F.2d 631, 637 (5th Cir. 1992). When the

plaintiff's case was decided in 1993, the Plan dictated that the Sub-Committee review medical reports and determine whether the employee's accident, disease, or physical impairment resulted in a permanent physical disqualification from his job with the company. In this case, the Fund Office notified the plaintiff, when he made his initial application in 1993, that he needed more evidence to show that he was permanently disqualified from his pre-strike job as a bus driver, because all the documents he presented with his application only focused on his interim job as a furniture mover. The Fund Office gave Mr. Lewis the opportunity to submit additional evidence of permanent disqualification in his job as a bus driver. The only evidence that the plaintiff subsequently submitted was a letter written by Dr. Lipton stating that the plaintiff could not "return to the unrestricted duties of a bus driver." However, the letter made no mention of whether this restriction was permanent. Given these undisputed facts, this Court finds that the Sub-Committee gave a fair and reasonable reading to the Plan's provisions in denying the plaintiff's application.

### iii. Substantial Unanticipated Costs

The final factor to consider is whether either side's interpretation of the Plan "would give rise to 'substantial unanticipated costs to the Plan.'YES" Batchelor, 877 F.2d at 445 (citing Lowry v. Bankers Life and Casualty Retirement Plan, 865

12

F.2d 692, reh'g denied 871 F.2d 522, 524 (5th Cir.1989)). An interpretation that would result in substantial unanticipated costs may be less likely to be legally correct. Id. The plaintiff and defendant agree that neither party's interpretation of the Plan would result in substantial unanticipated costs. While the plaintiff argues that the lack of substantial unanticipated costs means that an "element has not been satisfied," and therefore the "defendants would not be prejudiced by the approval of the Plaintiff's claim," this does not mean that the correct interpretation has not been given to the Plan. The lack of substantial unanticipated costs will be treated as a neutral element in deciding whether there has been a correct interpretation. Only where unanticipated costs are substantial would an interpretation be less likely to be correct; without any such costs, the interpretation would neither be more nor less likely to be correct.

    Because this Court finds that the Board gave the Plan a uniform construction, as evidenced by the 19 other instances of similar denials of benefits, and because the Sub-Committee gave the Plan a fair and reasonable reading, and without any evidence that there are any substantial unanticipated costs, this Court finds that a legally correct interpretation of the Plan was given.

Therefore, the Court need not go further.[2] Inasmuch as the Sub-Committee made the legally correct interpretation, the Court is not compelled to proceed to the second step of <u>Wildbur</u>, to determine whether the Board's ultimate denial of benefits was an abuse of discretion because under a correct interpretation "no abuse of discretion could have occurred." <u>Spacek v. Maritime Ass'n, ILA Pension Plan</u>, 134 F.3d 283, 292 (5th Cir.1998).

---

[2] Even if one were to assume that the Board was not legally correct, the Court would hold that the Board did not abuse its discretion vested by the Plan, and that Mr. Lewis could not recover. To determine whether the Board abused its discretion, the Court considers: (1) the internal consistency of the plan under the fiduciary's interpretation; (2) any appropriate regulations formulated by the appropriate administrative agencies; and (3) the factual background of the determination and any inferences of lack of good faith. <u>Wildbur</u>, 974 F.2d at 638; See also, <u>Ellis v. Liberty Life Assur. Co. of Boston</u>, 394 F.3d 262, n.23 (5th Cir. 2002).

Courts determine internal consistency by evaluating whether the provisions of the plan as interpreted by the Board conflict with any other provision of the plan. See <u>Kennedy</u>, 954 F.2d at 1124. Here, the plaintiff claims that inconsistencies exist because the 1993 amendment of the Plan provided for different qualifications than what was in effect at the time that the plaintiff was injured. This is not an allegation that there is any internal inconsistency in the Plan itself; rather it is an allegation of an inconsistent application of the Plan. The Board applied the pre-amendment disability rules when it considered the plaintiffs first application, and applied the post-amendment disability rules when it considered the second application. Even if the Board had applied the pre-amendment rules, evidence of a Social Security Administration's ruling that the plaintiff was permanently disabled as of a date after he was terminated from Greyhound's employment would not make it any more likely that his application would have been granted under the old rules. Furthermore, since the date of disability determined by the Social Security Administration was after the amended disability rules went into effect, there was no inconsistent application of the Plan because the determining factor in whether to apply the old rules or the new rules is the date of disability.

The second <u>Wildbur</u> factor-any relevant administrative agency regulations-is neutral because none apply here. The third <u>Wildbur</u> factor also weighs in favor of Greyhound. Although Mr. Lewis may urge that Greyhound made its decision in bad faith, the evidence instructs otherwise. The Board went beyond its obligations in giving Mr. Lewis an opportunity to bolster his medical evidence in 1993 by sending him a letter before the Sub-Committee considered his case, telling him that the evidence he had submitted with his application was lacking. There is no evidence that the Board or the Plan Manager did anything other than follow the requirements mandated in the Plan in denying the plaintiff's application. Given these factors, the Court finds this record could not support a finding of abuse of discretion.

Accordingly, the Defendant's motion for summary judgment is granted.

New Orleans, Louisiana, August 31, 2006.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE